UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SIVA NALABOTU, DVM, S.M., PhD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:23-cv-00985-JRS-TAB |
| | ) |
| OMNIA INVESTMENT ADVISORS LLC, WILLIAM C. OVERSTREET, DANIEL J. DOXEY, and BRAINS LLC D/B/A FUND LAUNCH A/K/A INVESTMENT FUND SECRETS A/K/A BLACK CARD | ) ) ) ) ) |
| | ) |
| Defendants. | ) |

**Order on Motions to Dismiss or Transfer Venue and on Motions for Summary Judgment**

This is a contract dispute. Siva Nalabotu brought this action against Omnia Investment Advisors LLC ("Omnia"), William C. Overstreet, Daniel J. Doxey, and Brains LLC d/b/a Fund Launch a/k/a Investment Fund Secrets a/k/a Black Card ("Brains") (collectively referred to as "Defendants") to enforce a promissory note and guaranty and to recover damages. (2d Am. Compl. 1, ECF No. 35-1.) Doxey previously moved to dismiss for want of personal jurisdiction and improper venue, (ECF No. 17), which the Court granted without prejudice for lack of personal jurisdiction, (ECF No. 25). Doxey was re-added to the action by Plaintiff's Second Amended Complaint. (ECF No. 35-1; *see also* ECF No. 37.)

Now before the Court are Omnia's and Doxey's motions to dismiss or transfer venue, (ECF Nos. 38, 40), and Brains's Motion to Dismiss, (ECF No. 49). While those

motions were pending, Nalabotu filed a motion for partial summary judgment, (ECF No. 65), and Brains filed a motion for summary judgment, (ECF No. 69). The motions to dismiss are **granted** for lack of personal jurisdiction and improper venue; the motions for summary judgment, (ECF Nos. 65 and 69), are **denied as moot**.

## I.    Background

Nalabotu is an Indiana doctor. Doxey is a Utah businessman who owns and manages Omnia. Overstreet is a Texas consultant. In 2022, one of Overstreet's clients contacted Overstreet regarding a business opportunity and sought to secure funding. (Overstreet Decl. ¶ 5, ECF No. 51.) The client needed a "$350,000 deposit for approximately 90–180 days to secure Senior funding on a project"; and when the deposit was returned, the lender would receive an unspecified amount of money as a "bonus payment." (*Id.*) Overstreet contacted Omnia and spoke to Doxey asking whether Omnia had any clients interested in lending the money. (*Id.* ¶ 6.) Omnia found that client in Nalabotu.

Nalabotu was a member of "Investment Fund Secrets," ostensibly a financial coaching program owned and operated by Brains. (2d Am. Compl. ¶ 2, ECF No. 35-1.) Brains hosted an investment conference in Mexico, where Doxey met Nalabotu and pitched Overstreet's client's project as an investment opportunity. (*Id.* ¶¶ 5, 16.) Nalabotu agreed to provide the $350,000 on the condition that Overstreet personally guarantee the promissory note. (Overstreet Decl. ¶ 6, ECF No. 51.) Overstreet agreed and signed the guaranty. (*Id.*) Under the promissory note (the "contract"), Nalabotu was to be repaid by January 30, 2023; in the event of a default, Omnia

would also pay interest. (2d Am. Compl. Ex. A, ECF No. 35-1 at 19.) Nalabotu alleges that Omnia neither repaid the principal by the deadline nor made any later payments toward the outstanding balance. (2d Am. Compl. ¶ 33, ECF No. 35-1.)

Nalabotu sued to enforce the contract and recover damages from the alleged breach. He alleges seven counts: (1) breach of promissory note against Omnia and Doxey; (2) breach of guaranty against Overstreet; (3) unjust enrichment against all Defendants; (4) conversion against Omnia and Doxey; (5) negligent misrepresentation against Omnia, Doxey, and Brains; (6) civil conspiracy against all Defendants; and (7) violation of the Indiana Uniform Securities Act against Omnia and Doxey. (*Id.* ¶¶ 50–75.)

Doxey, Omnia, and Brains now move to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction or 12(b)(3) for improper venue. Doxey and Omnia alternatively move to transfer venue to the United States District Court for the Southern District of New York under 28 U.S.C. § 1406(a) based on a forum selection clause in the promissory note. The Court declines to exercise its power to transfer; therefore, the case is **dismissed** for lack of personal jurisdiction and improper venue.

## II.   Personal Jurisdiction

### A. *Legal Standard*

Federal Rule of Civil Procedure 12(b)(2) requires dismissal if the Court lacks personal jurisdiction over a Defendant. The plaintiff "need only make a prima facie case of personal jurisdiction" at the motion to dismiss stage. *Hyatt Int'l Corp. v. Coco*,

3

302 F.3d 707, 713 (7th Cir. 2002).  Nalabotu alleges only specific personal jurisdiction, (Pl.'s Opp. 4, ECF No. 42), which arises when a defendant has "'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (first quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); then quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).  Specific jurisdiction comports with federal due process requirements if the out-of-state defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

In the Seventh Circuit, *Lakeside Bridge & Steel Co. v. Mountain State Construction Co.*, 597 F.2d 596 (7th Cir. 1979), is "something of a borderline for a no-jurisdiction finding: '[W]hen a defendant's contacts with the forum state have been as—if not more—limited than those of the defendant in *Lakeside*, this court has denied personal jurisdiction.'"  *Northern Grain Mktg., LLC v. Greving*, 743 F.3d 487, 494 (7th Cir. 2014) (quoting *Madison Consulting Grp. v. South Carolina*, 752 F.2d 1193, 1200 (7th Cir. 1985)).  In *Lakeside*, the Seventh Circuit found that Wisconsin lacked personal jurisdiction where there were no contacts between the parties in Wisconsin, the defendant had "no place of business, property, bank deposits, telephone, or telephone listing in Wisconsin and [had] never sent any officer, agent, or employee" there, and had no contacts with Wisconsin aside from orders placed with

4

the Wisconsin business. 597 F.2d at 597. The court found that even though the defendant had placed the order with the plaintiff and had mailed some correspondence to Wisconsin, this could not satisfy the Due Process Clause without some other relationship between the defendant and Wisconsin. *Id.* at 598.

### B. *Doxey and Omnia*

Nalabotu, Doxey, and Omnia make substantially the same arguments in this round of motions to dismiss as in the first. (*See* ECF Nos. 17, 18, 19, 25.) Nothing in the facts has changed since then, despite Nalabotu's assertion to the contrary in his motion to re-add Doxey as a defendant. (*See* Mot. Leave Add Additional Parties 1, ECF No. 31). Nalabotu alleges that the Court has specific jurisdiction over Omnia and Doxey because of "Doxey's willful, intentional, direct, and continued business dealings with Dr. Nalabotu, an Indiana citizen." (Pl.'s Resp. 2, ECF No. 42.) Nalabotu argues that therefore, despite no other contact with Indiana, Omnia and Doxey "must have reasonably anticipated that [they] might be haled into court in Indiana." (*Id.* at 4.) The Court disagrees.

*Lakeside* is instructive. In that case, although the defendant "in a sense caused the activity in Wisconsin by placing the order" and had mailed some correspondence to Wisconsin, there was no personal jurisdiction because there were no other contacts between the defendant and the forum state, so the plaintiff was "in absolute control over where [the defendant] could conduct [the relevant] activity." 597 F.2d at 603. Nalabotu argues that *Lakeside* is distinguishable because "the parties did more than merely mail correspondence between Indiana and Utah," since "Doxey solicited funds

5

from Plaintiff and repeatedly accepted wired funds from Plaintiff's Merchant's Bank of Indiana bank account." (Pl.'s Resp. 7, ECF No. 42.) However, Doxey solicited Nalabotu in Mexico, and accepting funds from someone in a particular state does not equate to "purposeful[] avail[ment]" of the privilege of conducting business there. *Lakeside*, 597 F.2d at 603 (internal quotation marks omitted). The *Lakeside* court specifically rejected the exercise of jurisdiction where, as here, the plaintiff has complete control over the connection between the defendant and the forum state. *Id.*

The only reference to Indiana in the contract is the directive to send payments here. Doxey solicited Nalabotu in Mexico. Doxey signed the contract in Utah, and the contract names New York in its choice of law and forum selection clauses. (2d Am. Compl. Ex. A, ECF No. 35-1 at 19–20.) Put otherwise, the only reason Doxey and Omnia have interacted with Indiana is because Nalabotu lives here; neither Omnia nor Doxey personally conducts any business in Indiana or targets Indiana's consumers in Indiana. (*See* Doxey Decl. ¶¶ 13–22, ECF No. 41-1.) Nalabotu could choose to live anywhere. He could specify any address to which Omnia should send payments. This is precisely the kind of "random, fortuitous, or attenuated" contact that the Due Process Clause does not allow as the basis for personal jurisdiction. *Burger King*, 471 U.S. at 475 (internal quotation marks omitted). The Court does not have personal jurisdiction over Doxey or Omnia.

### C. Brains

For the same reasons, the Court lacks personal jurisdiction over Brains. Brains is a Utah business, owned by EMVI Enterprises, LLC, another Utah business, owned

6

by sole member Mason Vranes, a citizen of Utah.  (2d Am. Compl. ¶ 8, ECF No. 35-1; Vranes Decl. ¶¶ 1–2.)  Like Doxey and Omnia, Brains does not have offices, real property, or bank accounts in Indiana, nor does it conduct business in Indiana.  (Vranes Decl. ¶¶ 5–8, ECF No. 50-1.)  Nalabotu argues that the Court has personal jurisdiction over Brains because the Court has personal jurisdiction over Doxey, and Doxey is an agent of Brains.  (Pl.'s Opp. 6, ECF No. 56.)  But the Court does not have personal jurisdiction over Doxey, so this argument fails.

Nalabotu also argues that "Brains purposefully availed itself of the benefits of conducting business in the State of Indiana" by representing that Doxey was an investment expert and by engaging in business with an Indiana citizen.  (*Id.* at 5.)  This is not how purposeful availment works.  Nonresidents purposefully avail themselves of the privilege of acting in a state if they "invok[e] the benefits and protections of its laws," by, for example, advertising or selling products in the forum state.  *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011).  Nalabotu cites *Giotis v. Apollo of the Ozarks, Inc.*, 800 F.2d 660 (7th Cir. 1986), for the proposition that "it is 'instructive to examine the economic context of the suit'" in assessing whether a defendant's contacts with a state should have led him to anticipate being sued in that state's courts.  (Pl.'s Opp. 6, ECF No. 56 (quoting *Giotis*, 800 F.2d at 666–67).)  That case, however, does not help Nalabotu.  The Seventh Circuit in *Giotis* describes two fact patterns, one that satisfies the purposeful availment test and one that does not.  The *Giotis* court first considers a fact pattern "where the seller (plaintiff) is suing a buyer (defendant) in the seller's forum" and "the buyer often has

7

no other contacts with the seller's forum apart from the particular sale." 800 F.2d at 667. "This single contract between the seller and the nonresident buyer, without more, is not enough to meet the purposeful availment test." *Id.*

By contrast, the purposeful availment test is more easily met by a fact pattern in which the buyer is suing the seller, where "the seller often sells to buyers in the forum state . . . , so that the contract at issue is but one of many contacts between the seller and the buyer's forum." *Id.* The seller has personally availed itself of the buyer's forum because it "realizes the much greater economic benefit of multiple sales in distant forums, of which the purchase by the particular buyer . . . is merely one example." *Id.* The seller "may not have mentally formed a purpose to sell its product to the particular individual buyer who is suing it, but the seller surely has purposefully chosen to sell generally to buyers in the forum state and reaps the economic benefit of doing so." *Id.*

The latter scenario is the opposite of what happened here. Although Nalabotu is the "buyer"—since he paid Omnia—and the plaintiff, the facts of this case more closely mirror the first situation where the seller is the plaintiff. There is a single contract between the parties; the defendant has no other connection to the plaintiff's home state. Doxey, Omnia, and Brains have not realized any economic benefit of "sell[ing] generally to buyers in" Indiana because they do not conduct business in Indiana. *Id.* Instead, they "formed a purpose to sell [their] product to the particular individual buyer," Nalabotu. *Id.*

8

Finally, as Brains points out, Nalabotu does not allege any connection between Brains and the promissory note. (Brains Br. Supp. Mot. Dismiss 1, ECF No. 50; *see generally* 2d Am. Compl.) Nalabotu seeks to hold Brains responsible for "facilitat[ing] Doxey's misrepresentations" by hosting the conferences such as the one Nalabotu attended. (2d Am. Compl. ¶ 20, ECF No. 35-1.) Brains's connection to Nalabotu himself is tenuous, then, and its only apparent connection to Indiana is this lawsuit. Again, this runs afoul of *Lakeside*—Nalabotu has complete control over Brains's connection to the forum state. *Lakeside*, 597 F.2d at 603. The Court does not have personal jurisdiction over Brains.

## III.   Venue

### A. Legal Standard

Venue is proper under 28 U.S.C. § 1391(b)(2) if a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of Indiana. Circuit authority on § 1392(b)(2) is limited, so the Court takes guidance from other district court decisions. Determining whether venue is appropriate under § 1391(b)(2) "is more of a qualitative, rather than quantitative inquiry," and it is not necessary that a majority of the events take place in the forum district. *Honest Abe Roofing Franchise, Inc. v. Lesjon Holdings, LLC*, No. 2:23-cv-00395-JMS-MJD, 2023 WL 8452415, at *6 (S.D. Ind. Dec. 6, 2023). Courts in this circuit have typically considered events "substantial" if they are "part of the 'historical predicate' of the claim." *United States Schools of Golf, Inc. v. Biltmore Golf, Inc.*, No. 1:05-cv-0313-DFH-TAB, 2005 WL 3022005, at *8 (S.D. Ind. Nov. 10, 2005) (quoting *Master Tech*

9

*Prods., Inc. v. Smith*, 181 F. Supp. 2d 910, 914 (N.D. Ill. 2002)). "A proper venue inquiry looks not to the defendant's contacts with the forum, but rather to the location of the events giving rise to the cause of action." *Id.* (citing *Master Tech*, 181 F. Supp. 2d at 914).

### *B. Analysis*

Nalabotu argues that this venue is proper because Omnia was supposed to pay him in Indiana. (Pl.'s Opp. 9, ECF No. 42; *see also* ECF No. 56 at 7.) Omnia and Doxey both assert that venue is improper because "[a]ll of Omnia's employees and substantially all of its activities are located in" Utah and "[t]he parties negotiated the Promissory Note outside of Indiana." (Omnia's Br. Supp. Mot. Dismiss 9, ECF No. 39.) Brains endorses its co-Defendants' argument and adds that any alleged breach occurred in Utah, since Omnia "presumably would direct payments of the Promissory Note from its Utah headquarters." (Brains' Opp. 6, ECF No. 50.)

*Honest Abe Roofing Franchise, Inc. v. Lesjon Holdings, LLC* provides a valuable comparison. In that case, an Indiana corporation sued a franchisee that operated in Illinois. No. 2:23-cv-00395-JMS-MJD, 2023 WL 8452415, at *2 (S.D. Ind. Dec. 6, 2023). The franchise agreement specified Illinois in its forum selection clause; the guaranty allowed Honest Abe to sue in Indiana. *Id.* The franchise agreement was executed in Indiana and the franchisee owners attended trainings in and sent payments to Indiana. *Id.* at *5. The court found that venue was proper in Illinois, not Indiana: "[a]lthough Honest Abe allegedly did not receive its payments in Indiana, and some of its trainings occurred in Indiana, the conduct giving rise to its

10

claim arose in Illinois. That is where Defendants reside, carried out their franchise, and allegedly breached the franchise provisions." *Id.* at *7.

The "historical predicate" of Nalabotu's claim did not take place in Indiana. The documents were not signed in Indiana, Defendants do not operate in Indiana, Defendants did not solicit Nalabotu in Indiana, and any breach resulting from Omnia's alleged failure to pay Nalabotu under the promissory note occurred in Utah, where Omnia operates, rather than Indiana. *See Honest Abe*, 2023 WL 8452415, at *7. The only connection to Indiana that would support venue in this district is that payments from Omnia to Nalabotu were to be directed here. In *Honest Abe*, the court specifically rejected that as a basis for venue even when other actions took place in Indiana. *Id.* Instead, the court found, failure to pay took place where the payments would have originated—Illinois. *Id.* Indiana is not the proper venue for this suit.

### IV.   Transfer

#### A. *Legal Standard*

Since venue is improper, the Court may transfer the case to another district in which the case could have been brought if transfer is "in the interest of justice." 28 U.S.C. § 1406(a). It is not necessary that the transferor court have personal jurisdiction over the defendants. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465 (1962). Determining whether transfer would be "in the interest of justice" is committed to the discretion of the district court, and transfer is not required in every case, even if dismissal occurs after the statute of limitations has run. *Hapaniewski*

*v. City of Chicago Heights*, 883 F.2d 576, 580 (7th Cir. 1989) (citing *Saylor v. Dyniewski*, 836 F.2d 341, 345 (7th Cir. 1988)).

"When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause" unless there are "extraordinary circumstances unrelated to the convenience of the parties." *Atlantic Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 62 (2013). "In contracts containing a choice of law clause, . . . the law designated in the choice of law clause [is] used to determine the validity of the forum selection clause." *Jackson v. Payday Financial, LLC*, 764 F.3d 765, 775 (7th Cir. 2014) (citing *Abbott Lab'ys v. Takeda Pharm. Co.*, 476 F.3d 421, 423 (7th Cir. 2007)). This includes the determination of whether the clause is mandatory or permissive. *See id.* at 774 (internal quotation marks and citations omitted) ("At present, the majority of federal circuits hold that the enforceability of a forum selection clause implicates federal procedure and should therefore be governed by federal law. We have taken a different approach.").

New York law is applicable here. (*See* 2d Am. Compl. Ex. A, ECF No. 35-1 at 20.) "[M]andatory forum selection clauses . . . provide that the specified forum is the exclusive or sole forum in which the matter may be heard," while permissive forum selection clauses "confer jurisdiction on the specified forum to hear the matter but do not limit the parties' rights to sue in another forum having jurisdiction over the defendants." *Walker, Truesdell, Roth & Assocs., Inc. v. Globeop Fin. Servs. LLC*, 2013 WL 8597474, at *5 (N.Y. Sup. Ct. May 27, 2013), *aff'd sub nom. New Greenwich Litig.*

12

*Tr., LLC v. Citco Fund Servs. (Europe) B.V.*, 41 N.Y.S.3d 1 (N.Y. App. Div. 1st Dept. 2016). A forum selection clause will not be enforced "without some further language indicating the parties' intent to make jurisdiction exclusive." *Fear & Fear, Inc. v. N.I.I. Brokerage, L.L.C.*, 50 A.D.3d 185, 187 (N.Y. Sup. Ct. 2008). *Fear & Fear* involved a forum selection clause providing that "any and all actions arising under or in respect of this Agreement *may* be litigated in any federal or state court of competent jurisdiction located in" Manhattan and that "each party to this Agreement irrevocably submits to the personal and *exclusive* jurisdiction of such courts." *Id.* at 186 (emphases added). The court found that although the word "may" was permissive, the specification that jurisdiction was "exclusive" in those courts rendered the clause mandatory. *Id.* at 188.

## B. Analysis

The promissory note here contains the following forum selection clause:

> The Maker hereby irrevocably and unconditionally (i) agrees that any legal action, suit, or proceeding arising out of or relating to this Note may be brought in the courts of the State of New York or of the United States of America for the Southern District of New York and (ii) submits to the jurisdiction of any such court in any such action, suit, or proceeding.

(2d Am. Compl. Ex. A, ECF No. 35-1 at 20.) This is a permissive forum selection clause. The Parties submitted to jurisdiction in New York State courts and the Southern District of New York. However, the Parties did not submit to the *exclusive* jurisdiction of these courts, and the clause does not state that suits *shall* be brought

in those courts, only that they *may* be brought in them.  Therefore, the clause must be read as permissive, not mandatory.  *See Fear & Fear*, 50 A.D.3d at 187.

The Court, then, is not required to transfer the case.  And it will not.  Two Defendants, Overstreet and Brains, have not moved for transfer.  Doxey and Omnia move for transfer as an alternative to dismissal but do not elaborate on why transfer would be in the interest of justice.  *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986) ("The movant . . . has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient."). Finally, although it is not dispositive, *see Hapaniewski*, 883 F.2d at 580, the statutes of limitations for Nalabotu's claims have not yet run; he has time to bring this case in an appropriate venue.

## V.     Conclusion

The Court lacks personal jurisdiction over Defendants Omnia, Doxey, and Brains. Additionally, the Southern District of Indiana is not the proper venue for this action. Defendants' Motions to Dismiss, (ECF Nos. 38, 40, 49), are **granted**.  The motions for summary judgment, (ECF Nos. 65 and 69), are **denied as moot**.  This case is **dismissed** pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3).  The clerk is **directed** to terminate this case.

**SO ORDERED**.

Date: 09/27/2024

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

14

Distribution to all registered counsel via CM/ECF

Distribution via U.S. Mail:

William C. Overstreet
2601 Ridgmar Plaza
Suite 204
Fort Worth, TX 76116